In the Matter of LOUIS H. SAMUELS, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, March 25, 1965.

*John G. Bonomi* (*Michael Franck* with him on the brief), attorney for petitioner.

*Louis H. Samuels,* respondent in person.

*Per Curiam.* The respondent, now 69 years of age, was admitted to the Bar on January 19, 1921, by the Appellate Division of the Second Department, and, during all the times of the alleged professional misconduct, maintained an office for the practice of law in this Department.

The petition charges the respondent with professional misconduct and conduct prejudicial to the administration of justice in that, while representing a party in a litigated proceeding in Surrogate's Court, Kings County, he addressed and transmitted letters to another interested party and to his attorney containing statements which were abusive, threatening, irresponsible and bizarre in nature, containing veiled threats of possible harm which might befall opposing counsel and containing statements purporting to set forth respondent's alleged association and familiar relationship with influential political and social personages. It is also charged that, in the same Surrogate's Court matter, he prepared and sent to the Surrogate, with copy to opposing counsel, a communication containing statements which were fantastic, bizarre and irresponsible in nature and not relevant to the matter before the Surrogate. It is alleged that the particular statements and comments in respondent's communications were irrelevant to the proceeding and were intended to influence or coerce a favorable settlement of the litigation on behalf of respondent's client.

The petition further charges the respondent with professional misconduct in that, after being advised that an investigation was being conducted by the Committee on Grievances, he transmitted to the counsel for the committee letters containing statements which were insulting and irresponsible.

The petition further alleges that the respondent "may be suffering from a mental disability which renders him unfit to practice law". This charge is alleged to be supported by the apparent irrational nature and content of respondent's letters and communications, by certain illogical or irrational statements in his testimony before a Committee on Grievances, and by the findings of his physician hereinafter referred to.

The respondent interposed an answer which did not deny any of the allegations of the petition. Concededly, he was responsible for the letters which were annexed and referred to in the petition. His answer merely purported to set forth certain alleged defenses, which were conclusory in form and are wholly without merit.

On the above state of the pleadings, the respondent took the position that a reference was unnecessary. He wrote counsel for the petitioner, filing a copy of the letter with this court, that his answer "raises no issues of fact. A reference thereon will be improper". He insisted that the issues involved were issues of law which were required to be decided by the court. Thereafter, and on October 20, 1964, this court entered an order directing "that the matter herein shall be submitted and determined, without oral argument, upon the petition, exhibits, answer and amended answer of the respondent, and the testimony before the Grievance Committee with the exhibits there received", and provided for reasonable opportunity to the petitioner and respondent to submit briefs. The briefs of the parties have been received, and the matter is now submitted for determination.

The respondent maintains that he is not suffering from any mental disability rendering him unfit to practice law, and we agree that the record is lacking in competent proof to establish that he is now mentally ill. Furthermore, it appears from the record and the brief submitted by him, that he understands the nature of the charges and is fully able to defend against the same.

The respondent claims that he intended no harm by his several writings containing the irrelevant, improper, and apparently irrational statements; that none of the statements were slanderous; and that nothing he wrote had any effect upon the result of the litigation in Surrogate's Court or tended to impair the rights of any party. The respondent alleges that he was suffer-

ing from excessive tension and a condition of anxiety due to incurable physical ailments and, in particular, a serious heart condition; that, during the time when the letters were written, he was experiencing pain; that "I felt I would explode and die right then and there that minute"; and that he was in a state of emotional shock. On respondent's consent, a report of an examination by his doctor was received and the report stated that the doctor has "had occasion to treat him for a recurrent tension state manifested by episodes of (1) Neurodematitis and (2) Anxiety States. During the latter he has periods of insomnia, headaches, hyperexcitability and emotional upsets which serve to impair his judgment and thinking. Fortunately, this condition only occurs when he is under stress and is easily resolved with the aid of tranquilizers and removal of the stress."

The inability of an attorney in times of stress to think clearly and to control his emotions, whether or not the inability is induced by physical infirmities or illness, may not be accepted as an excuse for professional improprieties or irresponsibilities. Reprehensible conduct on the part of an attorney may not be justified on the ground that he lacked the physical or mental ability to cope with the ethical requirements of his profession. It is well settled that physical or mental deterioration is not a defense to disciplinary action for professional misconduct. "If an attorney's delinquency is due to his mental and physical condition, he is not in a fit shape to undertake to represent clients and maintain the standard of conduct that is demanded of the profession. As far as the public is concerned, irresponsibility does not differ in effect from wilful misconduct. The public is entitled to protection from a practitioner in that state, and the profession is entitled to be protected from the consequences resulting from one practicing while mentally sick." (See 7 Am. Jur. 2d, Attorneys at Law, § 59, p. 84.)

This court has stated: "The public is entitled to have as members of the Bar persons who are qualified and fit, and it looks to the court for its protection." (*Matter of Portnick*, 5 A D 2d 16, 17.) " As this [a disciplinary proceeding] is not a punitive proceeding and its object is the protection of the public (*Matter of Nicolini*, 262 App. Div. 114), the fact that respondent's derelictions may not spring from moral turpitude is not significant. One who is unable to act in accord with his duty as a member of the Bar must receive the same treatment as one who is unwilling to do so (*Matter of Bivona*, 261 App. Div. 221), and the same applies if the disability arises through mental illness (*Matter of Dubinsky*, 256 App. Div. 102; *Matter of Gould*, 4 A D 2d 174)." (*Matter of Kaplan*, 13 A D 2d 231, 232.)

The respondent's letters and the improper and irresponsible statements therein constitute professional misconduct. Particularly, the respondent, by his conduct, has violated the principles laid down by the Canons of Professional Ethics, including the following canons, to wit: Canon 17, providing that ill-feeling and personalities between advocates are to be avoided; Canon 22, providing in general for candor and fairness in the conduct of an attorney before the court and with other lawyers; and Canon 29, providing that attorneys " should strive at all times to uphold the honor and to maintain the dignity of the profession ".

The respondent may not evade responsibility for the admitted professional misconduct upon the ground of ill health and mental stress in connection therewith. " This court has already held that irresponsibility coupled with or caused by mental illness merits disbarment or suspension [citing cases]." (*Matter of Anonymous,* 21 A D 2d 48, 52.)

We have concluded that the respondent's conduct may not be condoned and that by reason thereof, he should be suspended for a period of three months. Any application by the respondent for reinstatement, following the expiration of said period, should be accompanied by a proper showing, including satisfactory medical proofs, of his fitness to engage in the practice of law.

BOTEIN, P. J., VALENTE, McNALLY, STEVENS and EAGER, JJ., concur.

Respondent suspended from the Bar for three months effective April 26, 1965.