In the Matter of MARK L. FISHBEIN (Admitted as MARK LEWIS FISHBEIN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 23, 1991

## APPEARANCES OF COUNSEL

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*D. Sanford Jorgensen* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Mark L. Fishbein was admitted to the practice

of law in New York in the First Judicial Department on March 17, 1980 and, at all relevant times herein, maintained an office for the practice of law in the First Department.

In 1988, respondent was charged with acts of professional misconduct in violation of DR 1-102 (A) (4), (5) and (6) of the Code of Professional Responsibility. Prior to the first hearing with the Departmental Disciplinary Committee (DDC), respondent executed a stipulation admitting most of the allegations. Respondent admitted: conversion of client's funds by depositing on June 27, 1985 two checks of a client totaling $1,234.68 in his personal nonescrow account in violation of DR 1-102 (A) (4), (5) and (6) and DR 9-102 (A) of the Code of Professional Responsibility; permitting his account to fall below zero in overdraft thereby converting to his own use his client's moneys in violation of DR 1-102 (A) (4), (5) and (6); issuing five checks on his account to the D'Agostino Supermarket, all of which were dishonored for insufficient funds, in violation of DR 1-102 (A) (4) and (6); issuing eight checks on his personal bank account to D'Agostino Supermarket between October 12, 1986 and November 9, 1986 which were dishonored for insufficient funds, in violation of DR 1-102 (A) (4) and (6); issuing three checks on his personal account to University Chemists between October 12, 1986 and November 9, 1986, which were returned dishonored for insufficient funds in violation of DR 1-102 (A) (4) and (6); and signing another's name to five checks on an account in a fraudulent attempt to induce D'Agostino Supermarket to accept the checks between October 20, 1986 and November 1987.

With regard to the first three charges, respondent maintains that he was acting in his client's best interest by negotiating a settlement which was less than the checks held in escrow and that any balance was retained for attorney fees. However, it was not until after disciplinary proceedings had been initiated that the negotiated settlement was finally paid. Respondent's clients further maintained that respondent had no authority to use the escrow checks in any other way.

With respect to the final charge, respondent maintains that he had authorization to use an acquaintance's D'Agostino check cashing card to cash one of his own (respondent's) checks. He admitted, however, that no permission was ever given to sign his acquaintance's name to checks, negotiable instruments or any other documents.

The Hearing Panel of DDC sustained the charges, and the

hearing continued as to the sanction to be imposed. It was respondent's contention that all of the acts committed were the result of his severe cocaine addiction. Respondent's problems began in 1983 when he first started using the substance, spending between $100 and $200 a week on the drug. The addiction progressed with the result that his spending increased to between $100 and $200 a night, 3 and 4 times a week. Increasingly, respondent's time became centered around the attempt to obtain the drug. Between 1985 and 1986, he began to switch from law firm to law firm and, by November 1986, he had no work or finances. The actions which are the subject of the charges sustained took place between June 1985 and November 1987, said to be the worst phase of his addiction.

Respondent entered the Areba-Casriel Institute for drug rehabilitation in November 1986 and remained until the spring of 1987. In mid-1987, he entered another treatment program at Stuyvesant Hospital. Respondent maintains that he has been drug free since December 1987. In January 1988, he moved to Tuscon, Arizona, to continue his recovery in a halfway house. He regularly attends Alcoholics Anonymous meetings, sees a therapist, and speaks and acts as chairperson at meetings to help alcoholics and drug addicts. He has resumed practicing law in Arizona, where he was admitted to practice on May 19, 1990. The authorities in Arizona were fully informed of his pending proceeding, and he has been advised that his right to practice law in that State is dependent upon the sanctions imposed in this jurisdiction. Respondent further states that he does not intend to come back to New York or practice law here in the future. The DDC, based upon *Matter of Winston* (137 AD2d 385), recommended that respondent be suspended from the practice of law for three years commencing with November 1987 when "he voluntarily stopped using drugs and alcohol, sought treatment and ceased the practice of law in New York". The matter is now before us upon the DDC's motion to confirm and the cross petition of respondent in support of DDC's findings.

We confirm the findings that respondent is guilty of each of the specified charges, the only question before us being the appropriate sanction to be imposed under the specified circumstances. Respondent's addiction, which we find to be a significant contributing cause of his problems, does not excuse his serious misconduct *(Matter of Samuels,* 22 AD2d 564, 567). However, such addiction may be considered as a mitigating

factor when we consider the sanction to be imposed *(Matter of Winston, supra; see also, Matter of Levine,* 101 AD2d 49; *Matter of Driver,* 129 AD2d 119). We also take into account respondent's enrollment in drug rehabilitation programs and his conduct in remaining drug free since December 1987. His speaking engagements to help those with similar problems must be given due consideration. We are also cognizant of his admission to the Bar of Arizona, which had prior knowledge of his involvement with narcotics.

Accordingly, upon consideration of all the facts and circumstances, the motion to confirm is granted to the extent that respondent should be suspended for a period of three years, effective January 31, 1988. Any motion for reinstatement should be conditioned upon evidence demonstrating to the satisfaction of this court that respondent's rehabilitation is continuing, and should include a physical and psychiatric report attesting that he is physically and mentally capable of resuming the practice of law.

MURPHY, P. J., MILONAS, ROSS, ASCH and RUBIN, JJ., concur.

Petition granted and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of three years, effective as of January 31, 1988, and until the further order of this court.