[621 NYS2d 32]

In the Matter of KENNETH S. AMPEL (Admitted as KENNETH SETH AMPEL), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 3, 1995

**APPEARANCES OF COUNSEL**

*Deborah A. Scalise* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Howard Benjamin* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Kenneth S. Ampel, was admitted to the prac-

tice of law in New York by the First Judicial Department on March 5, 1979 under the name Kenneth Seth Ampel. At all times relevant herein respondent maintained an office for the practice of law within the First Judicial Department.

On or about September 29, 1993, respondent was served with a notice and statement of charges. Respondent was charged with seven violations of the Lawyers' Code of Professional Responsibility, as amended September 1, 1990, all arising out of his representation of two plaintiffs (the clients) in a personal injury action. Specifically, respondent was charged with violating Code of Professional Responsibility DR 1-102 (A) (4) and (7) (now [8]) (22 NYCRR 1200.3), DR 9-102 (A), (B) (3); (C) (1) and (4) (22 NYCRR 1200.46) and Rules of this Court (22 NYCRR) § 603.15 for his misappropriation to his own use of proceeds of the settlement of the clients' action, issuance of two checks drawn to the clients on an insufficient trust account balance, and misrepresentations to them as to what had occurred and why they were not timely paid. He was also charged with filing a false closing statement with the Office of Court Administration (OCA).

On October 28, 1993, respondent filed an answer to the charges admitting the essential allegations, but denying an intention to deceive or defraud.

On August 25, 1993, the Departmental Disciplinary Committee (the DDC) moved this Court for an order, pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), suspending respondent from the practice of law pending the outcome of disciplinary proceedings, based upon substantial admissions under oath that respondent had committed professional misconduct, and other uncontroverted evidence. By order entered March 3, 1994 (and corrected on March 7, 1994), this Court granted the Committee's motion and respondent was suspended from the practice of law, effective March 7, 1994, pending the outcome of disciplinary proceedings and until further order of this Court (*Matter of Ampel,* 196 AD2d 105).

It has been shown at hearings before a Hearing Panel that respondent, as counsel to the clients in a personal injury action, received a check for $90,000 in settlement thereof on November 3, 1992. Within eight days after the deposit of the check in respondent's escrow account, the balance therein had dropped to $45,096.20, and by the end of the month it had dropped to $34,966.76. On December 21, 1992, a check issued by respondent to the clients in the amount of $55,000, was

returned due to insufficient funds. A second check issued on December 29, 1992 was similarly returned. In fact, by December 31, 1992, the balance in such account had fallen to $3,806.14. By two checks dated January 6 and 8, 1993, respondent paid the clients in full, plus interest. Respondent gave the clients a purported copy of an Office of Court Administration closing statement showing a later receipt of the settlement money by him (November 30, 1992) and an earlier payment by him to the clients (December 8, 1992). The closing statement later submitted to the DDC listed such payments as having been made on November 6, 1992 and January 7, 1993.

The Hearing Panel sustained all charges against respondent. While the hearing was in progress an additional complaint was filed which was, with the consent of counsel, considered as aggravation in regard to sanction without the formal necessity of amending the charges before the Panel. The new complaint alleged that respondent and his firm had neglected a matter for several years, that he had untruthfully told the claimants that their case had been settled, and that he had actually paid the claimants $24,900 of his own money, which he represented as their share of the settlement proceeds.

In mitigation of his misconduct, respondent states that on his father's death he took over the business of the firm without management training or experience, that he had intended to borrow funds so that his checks would clear, but that his effort to do so in time failed, and that he was under stress because of health problems of his child and his wife. His four character witnesses testified that they had a high opinion of his honesty and that they believed his misconduct was an aberration.

The Hearing Panel recommended that respondent be disbarred, finding that his actions were venal despite his ultimate payment to the clients and despite the use of his own funds to pay the other claimants. The DDC sought an order confirming the Hearing Panel's report and imposing the recommended sanction of disbarment.

By cross motion dated October 11, 1994, respondent seeks an order disaffirming the findings and conclusions of the Hearing Panel and instead suspending him from the practice of law for a period of three years, effective March 7, 1994, the date of the Court-ordered interim suspension. In the alternative, if the Hearing Panel's findings and conclusions are

confirmed, respondent asks that the order of disbarment be made retroactive and effective as of the date of this Court's order of interim suspension, March 3, 1994, as corrected March 7, 1994.

There was ample evidence to support the Hearing Panel's findings that respondent was guilty of seven counts of professional misconduct, including the conversion of $55,000 in escrow funds entrusted to him by a client, failure to pay the funds when the client requested that he do so, misrepresentation to the client of the date of receipt of the funds, the knowing issue to the client of two checks although there were not sufficient funds in respondent's account to cover the checks, and the delivery to the client of a falsified Office of Court Administration closing statement.

Absent extremely unusual mitigating circumstances this Court has consistently held that the intentional conversion of funds belonging to a client or a third party is grave misconduct warranting the sanction of disbarment (*Matter of Schmidt*, 145 AD2d 103; *Matter of Malatesta*, 124 AD2d 62; *Matter of Walker*, 113 AD2d 254). An attorney who misappropriates funds is presumptively unfit to practice law (*Matter of Pressment*, 118 AD2d 270, 273, citing *Matter of Marks*, 72 AD2d 399, 401).

In cases where it has been found that the mishandling of client funds arose primarily out of an attorney's carelessness or the attorney was mistaken as to his entitlement to his client's funds and there was no motive to convert, the sanction imposed by this Court has been suspension from the practice of law for a period of two years (*see, Matter of Klugerman*, 189 AD2d 284; *Matter of Altomerianos*, 160 AD2d 96; *Matter of Altschuler*, 139 AD2d 311).

In the case at bar, no such special circumstances exist. The evidence establishes that respondent intentionally converted escrow funds. Respondent admitted that he used funds of the clients' settlement for his tax liabilities and other office bills, during a two-month period when he purposely did not notify them that he was holding their funds. Respondent falsely informed his clients of the date of the settlement, the date he received the settlement funds, and the date he intended to pay them; he also falsified his OCA closing statement evidently to disguise his use of the clients' funds. These acts were done solely to satisfy his personal financial obligations, and cannot be viewed as the result of carelessness or failure to keep

proper records. In *Matter of Pelsinger* (190 AD2d 158), which is relied upon by respondent, Pelsinger commingled personal funds with client funds held in two escrow accounts, repeatedly overdrew both accounts, wrote checks on each account payable to "cash" and repeatedly used funds held for the benefit of one client for another without permission or authority. The Hearing Panel noted that Pelsinger's ownership of funds in other personal accounts in excess of the escrowed funds bore on the question of whether he had an intent to gain personally. The Panel, finding no actual profit or dishonesty on the part of Pelsinger, sustained the charges relating to the rule prohibiting commingling, but did not sustain the charge of engaging in conduct involving dishonesty, fraud and deceit, in violation of DR 1-102 (A) (4) (22 NYCRR 1200.3). This Court agreed with the findings of the Hearing Panel and suspended Pelsinger from the practice of law for a period of three years.

While respondent contends that he did not intend to permanently deprive the clients of their settlement proceeds, he nevertheless admitted that he used their funds to satisfy his own personal financial problems. Thus, although he may have intended to repay the money in the future, his intent when he used their funds was to profit personally. Given respondent's admitted poor financial condition at that time, it is questionable whether his plan to repay the clients was realistic. While respondent subsequently borrowed the money to repay the clients, this Court has held that ultimate repayment of the misappropriated funds does not excuse the wrongful conduct *(see, Matter of Landau,* 180 AD2d 257).

The Hearing Panel properly determined that respondent intentionally converted client funds. Thus this is not a case for deviation from the generally imposed sanction for intentional conversion, namely, disbarment.

Furthermore, in the case at bar, intentional conversion of client funds was not the only dishonest conduct in which respondent has been found to have engaged. Respondent failed to promptly pay his client funds, lied to the client about receiving the funds, knowingly issued two bad escrow checks without sufficient funds to cover them, commingled personal funds with escrow funds, and gave the client a falsified OCA closing statement. Moreover, in a separate case, respondent neglected a legal matter entrusted to him, falsely informed the client that the matter had been settled, prepared a false release which was executed by the client, and paid the client

from his own funds the amount he falsely claimed the matter had been settled for. Disbarment is an appropriate sanction under the circumstances of this case.

In view of the facts that respondent has been suspended from the practice of law since March 7, 1994, pursuant to this Court's order, and that he filed an Affidavit of Compliance on April 19, 1994, indicating that he has fully complied with the terms of this Court's order, respondent's disbarment is made effective March 7, 1994.

Accordingly, the DDC's petition should be granted, the Hearing Panel's report should be confirmed, and the recommended sanction of disbarment should be imposed. Respondent's cross motion insofar as it seeks an order directing that disbarment be made effective March 7, 1994, the date of the Court-ordered interim suspension, should be granted. In all other respects, the cross motion should be denied.

MURPHY, P. J., SULLIVAN, RUBIN, NARDELLI and WILLIAMS, JJ., concur.

Petition granted and respondent disbarred, and cross motion granted only insofar as it seeks a direction that disbarment be made effective as of March 7, 1994, and the cross motion is otherwise denied.