[647 NYS2d 213]

In the Matter of ROGER G. SAM, JR. (Admitted as ROGER GUIL-LAUME SAM, JR.), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 24, 1996

## APPEARANCES OF COUNSEL

*Elyse N. Post* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Roger G. Sam, Jr., was admitted to the practice of law in the State of New York by the Second Judicial Depart-

ment on December 12, 1984, under the name Roger Guilluame Sam, Jr. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

By order (M-6167) and decision (211 AD2d 166) of this Court dated May 23, 1995, respondent was suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1), pending further disciplinary proceedings, based upon allegations and admissions that he converted client funds to his own use and issued checks to "cash" from his escrow account, and other uncontested evidence of professional misconduct. At a deposition before the Committee on June 30, 1994, respondent had admitted that he had withdrawn an $8,000 down payment which he had deposited into an escrow account prior to the closing and without notice to the purchaser, by issuing three checks in November and December 1992. He further admitted that he had ignored the request of the purchaser's lawyer to hold the money intact until the matter of the purchaser's default was adjudicated and that he used the funds for personal expenses. Respondent also admitted to invading other large escrow accounts.

Respondent was served with a notice and statement of charges dated September 13, 1995, in which it was alleged that he violated Code of Professional Responsibility DR 1-102 (A) (4) and (7) (now [8]), DR 6-101 (A) (3), and DR 9-102 (B) and (E) (22 NYCRR 1200.3, 1200.30, 1200.46), by intentionally and repeatedly converting escrow funds for his own use, withdrawing funds from his escrow account by issuing and negotiating checks to "cash," and neglecting legal matters entrusted to him.

Respondent failed to participate in a scheduled prehearing telephone conference and to serve an answer or otherwise respond to the charges.

A Hearing Panel convened on December 14, 1995 to hear testimony and receive evidence relating to the charges. Respondent did not appear at the hearing. By a Report and Recommendation dated February 6, 1996, the Hearing Panel sustained the charges and recommended that respondent be disbarred.

### The Charles Matter

In September 1992, respondent represented his wife in a transaction in which Leon Charles attempted to buy a house owned by respondent's wife. On September 18, 1992, Charles

issued a check in the amount of $8,000 to respondent as a down payment and respondent was required to hold the funds in escrow until the closing. On September 22, 1992, respondent deposited the $8,000 into his escrow account.

On September 25, 1992, Ms. Sam and Charles signed a contract of sale. Prior to the closing or default by the buyer, and without notice to the buyer's attorney, respondent withdrew the entire escrow deposit from the escrow account by issuing to "cash" and negotiating three checks, totalling $8,000, on November 13, 1992, November 24, 1992 and December 14, 1992. Respondent used the $8,000 to pay for personal expenses.

On February 2, 1993, Charles's attorney, Michael L. Basile, sent respondent a letter on Charles's behalf requesting the $8,000 down payment because Charles had been unable to obtain a mortgage. By letter dated March 12, 1993, respondent replied that Charles was in default because of his failure to obtain a mortgage and that he was retaining the $8,000 down payment as liquidated damages. Basile informed respondent that the $8,000 was in dispute and requested that respondent hold the money in escrow until the matter could be adjudicated in court.

Respondent ignored Basile's request to hold the disputed money intact. He did not replace it until November 2, 1993, two weeks after a Judge granted Charles's motion that respondent deposit the $8,000 with the court.

Charge One alleged that by intentionally converting $8,000 in escrow funds to his own use, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and failed to maintain escrow funds intact, in violation of DR 9-102 (B).

Charge Two alleged that by issuing and negotiating three checks to "cash" from his escrow account, respondent violated DR 9-102 (E).

Charge Three alleged that by converting $8,000 in escrow funds to his own use and by issuing and negotiating checks to "cash" from his escrow account, respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

The Hearing Panel sustained these charges based upon respondent's admissions in a deposition. In addition, bank records demonstrate that respondent withdrew the escrow funds and did not replace the money until he was ordered to do so by the court in a pending civil action between Charles and respondent.

## The Brozek Matter

On September 2, 1992, respondent represented Mayuree Brozek at a closing in the sale of her house. After the closing, Brozek requested that respondent hold the proceeds of the sale, amounting to $68,707.64, until the estate of her husband was settled. Brozek ultimately discharged respondent from representing her in connection with her husband's estate, and respondent issued a check to her for $68,707.64 on January 15, 1993.

From September 2, 1992 through January 15, 1993, however, respondent had failed to keep the funds intact and used them to pay his own business expenses. During that period the balance in respondent's escrow account repeatedly dropped below the $68,707.64 which he was obligated to maintain intact. Respondent issued and negotiated several checks to "cash" totaling $8,750. Respondent's client never gave respondent permission to use her funds to pay for his personal or business expenses.

Charge Four alleged that by intentionally converting for his own use a portion of the $68,707.64 real estate proceeds in escrow which he was obligated to maintain intact for his client, and by repeatedly allowing the balance in his escrow account to fall below $68,707.64, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and failed to maintain escrow funds intact, in violation of DR 9-102 (B).

Charge Five alleged that by issuing and negotiating several checks to "cash" totaling $8,750 from his escrow account, respondent violated DR 9-102 (E).

Charge Six alleged that by intentionally converting escrow funds for his own use and issuing and negotiating checks to "cash" from his escrow account, respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

The Hearing Panel sustained these charges on the basis of respondent's admissions and bank records also prove these charges.

## Repeated Misuse of Escrow Account

Charges Seven through Nine pertain to respondent's repeated misuse of his escrow account. From 1992 through 1994 (the charges were amended at the hearing to reflect that the misconduct began in 1990 rather than 1992), respondent made

numerous withdrawals from his escrow account by issuing and negotiating checks to "cash" totaling approximately $67,350. Respondent used the cash to pay for his business expenses. In addition, on several occasions from 1992 through 1994, respondent, in his capacity as escrow agent in real estate transactions, used escrow funds for his own expenses and then replaced the funds shortly before the closing. He never had the authorization of his clients or the other parties to the real estate transactions to withdraw or use the escrow funds.

Charge Seven alleged that by repeatedly and intentionally converting client and third-party funds for his own use while serving as escrow agent, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

Charge Eight alleged that from 1992 to 1994, respondent made numerous withdrawals from his escrow account by issuing and negotiating checks to "cash," in violation of DR 1-902 (E).

Charge Nine alleged that by using escrow funds that he was obligated to maintain intact as escrow agent, and by issuing and negotiating checks to "cash" on his escrow account, respondent engaged in conduct that reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

As previously noted, the Hearing Panel sustained these charges on the basis of respondent's admissions. Additionally, the Committee's Exhibit 18 establishes that respondent wrote checks to cash from his escrow account totalling $67,350.

Charges Ten through Thirteen pertain to two matters of neglect regarding complaints by Carmen Otero and Sarah J. Dewese. The Hearing Panel deemed these charged admitted since respondent did not attend the hearing.

At the conclusion of the hearing, the Hearing Panel adopted the recommendation of staff counsel for disbarment in view of respondent's intentional conversion of escrow funds, his neglect of client matters, his failure to cooperate with the Committee and his failure to attend the hearing. The Hearing Panel directed staff counsel to telephone respondent regarding its disposition and give him five days thereafter to explain his failure to respond to the charges. The Committee complied with these instructions and respondent did not thereafter contact the Committee.

The Departmental Disciplinary Committee (DDC) now seeks an order confirming the Hearing Panel's report and recommendation and imposing disbarment as a sanction.

Absent extremely unusual mitigating circumstances, this Court has consistently held that the conversion of funds belonging to a client or a third party constitutes grave professional misconduct warranting disbarment (*see, Matter of Ampel*, 208 AD2d 57). Additionally, respondent has further demonstrated his unfitness to be a member of the Bar by his failure to cooperate with the Committee and the Hearing Panel during the disciplinary proceeding (*see, Matter of Lubell*, 190 AD2d 479).

Respondent admitted to the conversion charges at a deposition before the Committee. Additionally, the documentary evidence clearly supports these charges. The neglect charges were properly sustained on the basis of respondent's default since he failed to answer the charges and did not attend the hearing despite receiving sufficient notice.

In view of the serious nature of respondent's misconduct, involving intentional conversion of client funds and his neglect of two legal matters, as well as his failure to contest the charges against him, the DDC's motion for an order confirming the Hearing Panel's report and recommendation, including the recommendation of disbarment, is granted, and respondent's name is stricken from the roll of attorneys, effective forthwith.

ROSENBERGER, J. P., WALLACH, RUBIN, KUPFERMAN and NARDELLI, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective September 24, 1996.