[661 NYS2d 195]

In the Matter of MARSHALL E. LIPPMAN (Admitted as MARSHALL ELLIOTT LIPPMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 17, 1997

### APPEARANCES OF COUNSEL

*Raymond Vallejo* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Marshall E. Lippman, was admitted to the

practice of law in the State of New York by the First Judicial Department on February 25, 1974, as Marshall Elliott Lippman. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was charged with 23 counts of professional misconduct relating to five different client matters. The charges alleged that respondent converted client funds and third-party funds that he was to hold in escrow and that he failed to preserve the identity of client funds. Respondent was also charged with having engaged in a pattern of neglect of clients' cases over several years and misrepresenting the status of cases to his clients. Finally, respondent was charged with failure to cooperate with the Departmental Disciplinary Committee (DDC) during the course of its investigation and with engaging in conduct prejudicial to the administration of justice.

After hearings held over six days, the Hearing Panel issued its findings and conclusions, sustaining most of the charges and giving respondent the opportunity to present evidence in mitigation.

Thereafter, the Hearing Panel issued its final report and the DDC seeks an order confirming the Hearing Panel's findings of fact and conclusions of law and imposing the recommended sanction of disbarment.

By cross motion, respondent asks this Court to disaffirm certain charges and confirm other charges. He also seeks to confirm the Hearing Panel's dismissal of charges and to disaffirm the Hearing Panel's recommendation of disbarment.

### The Sheehy Matter (Charges 1 to 3)

In April of 1989, respondent represented Kerbs Florist in a transaction involving the lease and purchase of a flower store by Thomas Sheehy. On or about April 21, 1989, respondent received a $10,000 down payment from Mr. Sheehy in connection with that transaction and on April 24, he deposited the funds in his attorney trust account at First American Bank of New York. By June 30, 1989, the balance in that account had dropped to only $4,802.22.

At some point thereafter, the transaction fell through and Mr. Sheehy demanded the return of his deposit. Respondent refused and Mr. Sheehy obtained a judgment in Nassau County for $12,189 in November of 1989. A year later, respondent finally satisfied the judgment but did so by making four payments to Sheehy's counsel.

At the hearings, respondent admitted that he transferred the Sheehy funds from his trust account to his operating account in April of 1989 and that the balance in his operating account thereafter fell to only about $5,300. In explanation, respondent testified that, just prior to receiving the Sheehy funds, he had opened a money market account at Republic Bank in Washington, D.C., with $10,000 of his personal funds because he was planning on relocating there and at the suggestion of his accountant he had created a "mental trust account" in Washington that contained, at all times, adequate funds to return the Sheehy deposit. Nonetheless, respondent admitted that he did not pay over the trust funds when presented with the judgment but he eventually paid in four installments.

Respondent's accountant did not corroborate his story. The accountant testified that he had instructed respondent to put the Sheehy funds in an account designated as trust funds and earmarked for the Sheehy transaction.

As did the Hearing Panel, we reject the explanation offered by respondent, finding it to be "false and à blatant misrepresentation * * * incredible and unworthy of belief."

We agree with the Hearing Panel's conclusion that respondent intentionally converted the Sheehy funds to his own use, and gave false testimony under oath to the Panel, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Also, we agree that the evidence established that respondent failed to preserve the identity of trust funds in violation of DR 9-102 (A) (22 NYCRR 1200.46) and that his over-all conduct in this matter was prejudicial to the administration of justice, in violation of DR 1-102 (A) (5).

Accordingly, the Hearing Panel's findings as to charges 1, 2 and 3 are confirmed.

### The Lemma Matter (Charges 4 to 7)

Respondent was retained in 1986 by Lemma Realty Corp. to handle its legal matters. In that capacity, respondent obtained a judgment against 29 Cornelia Street Owner's Corp. in March of 1987 in the amount of $48,261. Respondent never executed on the judgment he obtained. He did, however, charge Lemma $3,000 to cover expenses related to execution of the judgment and thereafter falsely advised Lemma that the judgment had been entered with the County Clerk and forwarded to the City Marshall for collection. At the hearings, respondent asserted

that he had returned the $3,000 payment but never produced any documentation for that claim. In light of the foregoing, the Hearing Panel sustained charges 4 through 7.

Charge 4 alleged violation of DR 6-101 (A) (3) (22 NYCRR 1200.30) (neglecting a legal matter); charge 5 alleged violation of DR 1-102 (A) (4) (intentionally converting client funds to his own use); charge 6 alleged violation of DR 7-102 (A) (5) (22 NYCRR 1200.33) (knowingly making a false statement of fact); and charge 7 alleged violation of DR 9-102 (A) (failing to preserve the identity of client funds).

We find that respondent's assertion that he refunded the money is insufficient to rebut the Hearing Panel's determination that he did intentionally convert client funds to his own use in violation of DR 1-102 (A) (4).

Further, while respondent admits that he wrote a letter to the Lemmas stating that he had forwarded the execution to the Sheriff's office although that was not in fact true, he contends that this fact should not support a finding that he knowingly made a false statement of fact because, he claims, he truly believed that an associate he employed had taken such steps. We find this conclusory assertion to be self-serving and without merit. Accordingly, we confirm the findings of charges 4 through 7.

### The Lipton Matter (Charges 8 to 11)

In this matter, the Hearing Panel sustained only charge 10, which accused respondent of violating DR 6-101 (A) (3) by failing to communicate with his client regarding the status of her civil action against her landlord.

Respondent admitted that, in December 1988, he agreed to represent Carol Lipton, Esq. in an action against her landlord, Gordo Realty, involving damages from a flood in her apartment. To that end, respondent commenced suit in Kings County Civil Court on or about December 21, 1988. At the same time, respondent filed an action in Housing Court against Gordo on Lipton's behalf. In February of 1989, Lipton retained another attorney to represent her in the Housing Court matter but continued to have respondent represent her in the Civil Court action. In May of 1989, Lipton signed a stipulation of settlement in the Housing Court action. Respondent was alleged to have stipulated to discontinue the Civil Court action without prejudice.

At the hearing, Ms. Lipton testified that she never intended for the Housing Court settlement to affect the Civil Court ac-

tion, did not authorize respondent to sign the stipulation, and was never advised of the discontinuance by respondent. After finally learning about the stipulation, Ms. Lipton made many attempts to contact respondent, to no avail. When she finally reached him, he denied having signed the stipulation and insisted that his signature was forged. Thereafter, it took respondent nine months to submit an affidavit stating that he had no knowledge of the stipulation being signed.

We agree with the finding of the Hearing Panel that there was no conclusive proof that respondent actually signed the stipulation. However, respondent's neglect of his client and refusal to communicate with her were amply established and, accordingly, the Hearing Panel's finding as to charge 10 is confirmed.

### The Long Matter (Charges 13 to 19)

In this case, respondent was charged with seven violations of the Code of Professional Responsibility: charges 13, 14, 16 and 17 alleged that he had violated DR 6-101 (A) (3) (neglecting a legal matter); charge 15 alleged that he had violated DR 7-101 (22 NYCRR 1200.32) (failing to seek the lawful objectives of his client); charge 18 alleged violations of DR 6-101 (A) (3) and DR 9-102 (C) (4) (neglecting a legal matter and failing to return property to his client); charge 19 alleged violation of DR 1-102 (A) (7) (now [8]) (conduct adversely reflecting on his fitness to practice law). The Hearing Panel concluded that respondent had "egregiously neglected Mr. Long's legal matters entrusted to him in violation of DR 6-101 (A) (3)" and that by doing so, respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]). Respondent does not contest the Hearing Panel's findings with regard to the Long matter. As respondent actually concedes that the evidence establishes that he neglected Mr. Long's cases, we confirm the Hearing Panel's findings of misconduct with regard to this matter and its dismissal of charges 15 and 18.

### The Cappetta Matter (Charges 20 to 23)

With respect to this matter, respondent was charged with four violations of the Code of Professional Responsibility: charge 20 alleged violation of DR 6-101 (A) (3) (neglect); charge 21 alleged violation of DR 1-102 (A) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); charge 22 alleged violation of DR 9-102 (C) (4) (failure promptly to deliver a

client's property when so asked); and charge 23 accused him of violating DR 1-102 (A) (7) (now [8]) (conduct adversely reflecting on his fitness to practice law). The Hearing Panel sustained charges 20, 21, and 23. Respondent challenges only the finding as to charge 21; in fact, he concedes that "it cannot be contested * * * that [he] neglected his client's legal matter."

Respondent had been retained by Mr. Cappetta to sue his former employers. Eventually, Mr. Cappetta brought an action in Federal court against respondent for malpractice stemming from his representation. In that case, both Magistrate Judge Dollinger and District Judge Sotomayer found respondent's neglect of the Cappetta matter to be incredible. In part, Judge Dollinger wrote:

"[Respondent] entirely failed to carry out his responsibilities to his client by not pursuing the claims that he had undertaken to assert, he failed to appear for required conferences or to respond to crucial motions, and he failed to advise his client of developments in the case, even when [Cappetta] persistently inquired. Moreover, the excuses proffered by Lippman are entirely threadbare. * * * Thus, even if credited, Mr. Lippman's testimony in no respect excuses his conduct.

"In any event, in general terms I find his testimony in this respect unworthy of belief. As noted, his conduct at all times reflected a total abnegation of responsibilities. * * * In short, I conclude that Lippman's failings in representing [Cappetta] were entirely inexcusable."

District Judge Sotomayer was no less critical when she affirmed the default judgment for malpractice. In fact, she was so outraged with respondent, particularly with regard to his habit of lying about where he resides in order to continue receiving the benefit of the City's rent control laws, that she ordered a transcript of the proceedings before her sent to the New York State Bar Association for disciplinary action.

Based on the Federal court decisions, the Hearing Panel correctly concluded that the evidence established that respondent neglected a legal matter entrusted to him (in violation of DR 6-101 [A] [3]) and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (in violation of DR 1-102 [A] [4]), which constituted conduct reflecting adversely on his fitness to practice law (in violation of DR 1-102 [A] [7] [now (8)]).

## Charge 12

Finally, the Hearing Panel sustained a charge that respondent violated DR 1-102 (A) (5) by failing to cooperate with the

Committee's investigation. Thus, Rosemary Palladino, Esq., former staff counsel at the DDC, testified that respondent treated the Committee's investigation with the same pattern of neglect that he showed toward his clients' cases. As one example, respondent still had not turned over to the Committee a copy of the check by which he allegedly repaid Lemma the $3,000 fee.

Respondent was given the opportunity to present evidence in mitigation and responded by submitting various character letters from friends, clients and associates. All attested to his good character and integrity notwithstanding the Hearing Panel's findings.

Respondent also submitted documents purportedly signed by Charles and/or Joseph Lemma that stated they had been repaid their $3,000 by respondent. Respondent did not, however, produce a copy of the payment check.

Respondent has received two prior admonitions. The first, issued December 15, 1989, admonished respondent for neglecting the affairs of a client. The second, issued May 23, 1990, admonished respondent for misrepresenting his clients' financial situations to lenders.

We agree with the finding of the Hearing Panel that respondent intentionally converted client funds, as well as engaged in a pervasive pattern of neglecting client matters, and misrepresenting the facts to, among others, Federal Judges and the Hearing Panel.

This Court has consistently held that the intentional conversion of client funds constitutes grave misconduct warranting the sanction of disbarment (see, e.g., Matter of Barth, 218 AD2d 304; Matter of Ampel, 208 AD2d 57). Since we confirm the findings of the Hearing Panel, which sustained several charges that respondent converted the funds of clients and third parties, disbarment is warranted.

The sanction of disbarment is additionally supported by the findings of egregious neglect of client matters, lying under oath to the Panel, and failing to cooperate with the investigation (see, e.g., Matter of Stein, 189 AD2d 128). Finally, we note, respondent has received two prior admonitions and throughout the disciplinary proceeding, respondent has failed to show remorse for his misconduct.

Accordingly, the petition by the DDC is granted, the Hearing Panel's report is confirmed, respondent's cross motion is denied, and respondent is hereby disbarred from practice as an attorney and counselor-at-law in the State of New York.

NARDELLI, J. P., WILLIAMS, TOM, MAZZARELLI and ANDRIAS, JJ., concur.

The petition is granted, the Hearing Panel's report is confirmed, respondent's cross motion, inter alia, to disaffirm the recommendation of disbarment, is denied, and respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective August 18, 1997.